(No. 74-CV-38—

IN RE APPLICATION OF ELLEN LEWIS AND MARY ANN SCOTT.

*Opinion filed April 2, 1976.*

SPENCER W. SCHWARTZ, Attorney for Claimants.

WILLIAM J. SCOTT, Attorney General of Illinois; LEONARD CAHNMANN, Assistant Attorney General.

PER CURIAM.

This claim arises out of a criminal offense which occurred on December 17, 1973, at 5541 South Ada Street, Chicago. Ellen Lewis, wife of the victim on behalf of herself and her son, Massawa Kawana Lewis, and Mary Ann Scott on behalf of her child, Melvin Lewis Williams, all seek compensation under the provisions of the Crime Victims Compensation Act, (Ill.Rev.Stat., 1973, Ch. 70, Sec. 70, 71, et seq.) (hereafter referred to as the "Act").

The contested issues presented to this Court are:

(1) Whether there can be compensable loss of support under the Act where the victim was unemployed at the time of the crime against him but was employed a short time prior to the crime, and

(2) Whether an illegitimate child may be a dependent under the Act.

The facts of the crime were that on December 17, 1973, at approximately 12:45 a.m. the body of the victim, Cleophus Lewis, was discovered on the lawn in front of 5541 S. Ada Street, Chicago.

The person discovering the body reported to the Chicago Police Department and the victim's body was transported to the Central Community Hospital, Chicago, where it was determined that the victim had died of gun shot wounds by an unknown assailant.

As to the first issue, the evidence was undisputed that the deceased was not employed at the time of his death. He had however been employed by Libby, McNeil & Libby of Chicago from 1967 (except for a 9 month layoff in 1968) to and including December 11, 1973, which was six days prior to his death. On December 11, 1973, he had been fired from his job by reason of an unsatisfactory attendance record. His loss of job was the culmination of a series of warnings and suspensions by his employer for this unsatisfactory attendance. His average monthly earnings were slightly in excess of $1,000.00 despite his absences.

Section 4 of the Act provides:

Pecuniary loss to an applicant under this Act resulting from injury or death to a victim includes . . . in the case of death, funeral and burial expenses and loss of support to the dependents of the victim. Loss of earnings, loss of future earnings and loss of support shall be determined on the basis of the victim's average monthly earnings for the six months immediately preceding the date of the injury or on $500.00 per month, whichever is less . . . .

There is nothing in the Act which requires, as a precondition to a claim for loss of support, that the victim be employed on the date of his death. In fact, the contrary seems to be indicated by the language of Section 4.

It is the opinion of this Court that, if it is more likely than not that the victim would have been gainfully employed in the time immediately following crime, his dependents have, in fact, suffered a loss of support. Being employed currently at the time of the crime is but one good indication of the likelihood of future employment and therefore the likelihood of future loss to dependents. Another good indication of the likelihood of future employment and therefore of possible future loss to the victim's dependents is recent employment and the length of that recent employment.

In this case, the victim had been originally employed by McNeil, Libby & McNeil on August 14, 1967, until he was laid off on May 3, 1968. He was rehired on June 1, 1970, and worked continuously, except for his unsatisfactory absences and suspensions, from that time until he was finally terminated. The absences which caused his termination were on the average 1 day per month and on a few occasions from 2 days to 2 weeks. Suspensions were up to 5 days.

This record of employment to within one week of his death and continuous employment for 3½ years indicates to this Court that it is more likely than not that he would have continued to be gainfully employed thereafter. We hold therefore that his dependents suffered a loss of support. Pursuant to Section 4 of the Act, the compensa-

ble loss must be computed on the basis of $500.00 per month. Based on the average life expectancy of a 30 year old man, it is apparent that the loss of support to his dependents resulting from his death is computed to be far in excess of the $10,000.00 maximum that can be awarded under the Act.

As to the second issue, the victim's wife, Claimant Ellen Lewis, testified that she married the victim in 1963. There was born of that marriage one surviving child, namely, Massawa Kawana Lewis, age 4. She further testified that her husband was the father of an illegitimate son, namely, Melvin Lewis Williams. The victim openly regarded Melvin Lewis Williams as his son and supported him on a regular basis.

Claimant Mary Ann Scott testified that she is the mother of Melvin Lewis Williams who was born on September 4, 1963, and that the victim, Cleophus Lewis, was the father of that child. She was never married to the victim. The victim paid her about $15.00 per week for the child's support and brought him gifts. At times he would miss a week of paying support but would make up the deficiency at a later date. He orally acknowledged the child as his to her relatives.

The Social Security Administration of the United States Government made a determination that the child was the victim's son and pays to her for his support the sum of $250.80 per month.

The victim never acknowledged the paternity of Melvin Lewis Williams by any written statement or any statement in open court nor were any proceedings ever instituted to establish paternity. The birth certificate named Mary Scott as mother but did not name a father, although the certificate gave the father's age as 21 which corresponded to the victim's age at that time.

Melvin Lewis Williams, age 11, testified that

Cleophus Lewis, the victim, was his father. The victim gave his mother $15.00 every week and gave him $1.00 allowance per week. The victim took the boy out and brought him gifts at various times. The victim called him "Melvin," but at times called him "son." At times Melvin Lewis Williams stayed at his father's home.

Kelly Williams, Robert Williams, and Richard Yearby all testified on behalf of Mary Ann Scott that the victim orally acknowledged Melvin Lewis Williams as his son and that they witnessed the payment of support money to Mary Ann Scott.

The evidence, set out above in detail, is clear and convincing that the child, Melvin Lewis Williams, was in fact the illegitimate son of the victim, Cleophus Lewis, and was being supported by the victim at the time of his death. The fact that the victim's wife, Claimant Ellen Lewis, verified this, in spite of the fact that such verification might lessen the amount of her own award, is most convincing. Her testimony and the testimony of Melvin Lewis Williams and the other corroborating witnesses were most credible and were uncontradicted.

It has long been the law in Illinois that an illegitimate child cannot inherit from his father. The harshness of this doctrine has survived many attacks. The leading case in the country positing this rule is *Labine v. Vincent,* 401 U.S. 532 (1971). In this case, an illegitimate child was denied the right to inherit from her father because the applicable Louisiana statutes governing inheritance by illegitimates had not been complied with. The reasoning applied by the United States Supreme Court in upholding the pertinent Louisiana statutes could, of course, be modified to apply to the similar statutes in the State of Illinois merely by substituting Illinois for Louisiana in the Court's opinion. The Court said:

Of course, it may be said that the rules adopted by the Louisiana Legislature discriminate against illegitimates . . . But the power to make rules to establish, protect, and strengthen family life as well as to regulate the disposition of property left in Louisiana by a man dying there is committed by the Constitution of the United States and the people of Louisiana to the legislature of that State. Absent a specific constitutional guarantee, it is for that legislature, not the life-tenured judges of this Court, to select from among possible laws. We cannot say that Louisiana's policy provides a perfect or even a desirable solution or the one we would have provided for the problem of the property rights of illegitimate children. Neither can we say that Louisiana does not have the power to make laws for distribution of property left within the State.

Respondent points out that by virtue of Illinois Revised Statutes, Chap. 106¾, Sec. 54, only the Circuit Court of Cook County may hold hearings to establish paternity and that such an action must be brought within two years of the birth of the child unless the person accused has acknowledged the paternity of the child by a written statement or in open court, and that since no paternity action was ever filed, the Court of Claims is without jurisdiction to adjudicate the issue of paternity.

This Court is of the opinion that the concepts enumerated in the *Labine* case and by the Illinois statutes regarding paternity are not applicable to the situation in the instant case.

The Act provides in Section 3 that:

A *person* is entitled to compensation under this Act if: (a) he . . . is a *person* who was dependent on a deceased victim of a crime of violence for his support at the time of the death of that victim. . . . (emphasis added)

Section 2(a) uses the word "person" in defining the applicant. Section 8(b) of the Act also uses the word "person" or "persons" in discussing dependents.

In the case of *Yellow Cab Company v. Industrial Commission of Illinois,* 42 Ill.2d 226 (1969), the Illinois Supreme Court construed the question of whether an illegitimate child of a deceased employee may recover under Section 7(a) of the Workmens Compensation Act. Section 7(a) of the Workmens Compensation Act provides for compensation in fatal cases to "any widow, child or

children whom the victim was under legal obligation to support at the time of the accident." The Court held that in a situation similar to the instant case where there had been no proceedings ever instituted to establish paternity but where the evidence was clear that the employee was the father, the illegitimate child was entitled to an award.

The language of the Crime Victim's Compensation Act is much broader than the Workmens Compensation Act. The Workmens Compensation Act uses the word "child or children" while the Crime Victims Compensation Act uses the broader word "persons." The Workmens Compensation Act limits awards to those children whom the victim was "under legal obligation to support." The Crime Victims Compensation Act does not specifically limit a dependent to one whom the victim was under any legal obligation.

Since the Illinois Supreme Court has decided in the *Yellow Cab* case that an illegitimate child may recover under the Workmens Compensation Act, a statute that is more narrowly drawn than the Crime Victims Compensation Act, it follows that an illegitimate child may likewise recover as a dependent under the Crime Victims Compensation Act.

The United States Supreme Court in the case of *Gomez v. Perez,* 409 U.S. 535 (1973), held:

. . . a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judically enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is illogical and unjust.

This Court further takes note of the recent Illinois Appellate Court case holding in *Cessna v Montgomery,* 28 Ill.App.3d 887, 329 N.E.2d 861 (1975), which the two year statute of limitations for paternity actions was held

unconstitutional and in which case the Court held that natural fathers have the duty of supporting their illegitimate children.

This Court therefore holds that an illegitimate child of a victim of a violent crime may be a dependent under the Crime Victims Compensation Act where the proof of paternity and of dependency is clear and convincing and further holds that the proof in the instant case meets that standard.

Therefore, Melvin Lewis Williams is entitled to share in the award for loss of support.

The Court further finds that Cleophus Lewis was the victim of a violent crime, to wit "Murder", Illinois Revised Statutes 1973, Chap. 38, Sec. 9-1. The Court further finds that there is no evidence to indicate that the deceased victim provoked the crime nor that he was related to or shared the same household of the assailant and that the Claimants cooperated with law enforcement officials.

The Court further finds that the Claimant Ellen Lewis paid funeral expenses to the Drexel Funeral Home in the amount of $2,230.00.

In determining the amount of compensation to which an applicant is entitled, Section 7(d) of the Act states that this Court:

(d) shall deduct $200.00 plus the amount of benefits, payments or awards, payable under the Workmens Compensation Act or from local governmental, state or federal funds or from any other source (except annuities, pension plans, federal social security benefits and the net proceeds of the first $25,000.00 of life insurance that would inure to the benefit of the applicant . . .).

We interpret the above provision to mean that the benefits received by the victim's family as a result of his death and deduction of $200.00 shall be deducted from the total loss sustained and not from the $10,000.00 maximum amount payable under the Act. On this point

we are adopting a recent opinion of the Massachusetts Supreme Court on the same point arising under the provisions of an act identical to ours in all material respects: *Gurley v. Commonwealth,* 296 N.E.2d 477, (1973).

In the claim before us, the Claimant Ellen Lewis received $10,000.00 as proceeds of a life insurance policy and all the Claimants are receiving social security benefits, none of which is deductible under the Act. They received no other benefits from other sources. The statutory deduction of $200.00 having been deducted from the total amount of loss, it is apparent that the net loss sustained by the Claimants is far in excess of the $10,000.00 maximum amount that can be awarded under the Act.

Before an award is granted for loss of support the Claimant Ellen Lewis is entitled to an award to compensate her for her pecuniary loss suffered as a result of the funeral expense of $2,230.00. This leaves an amount of $7,770.00 that can be awarded for loss of support.

This Court finds that the following persons were dependent upon the victim Cleophus Lewis for support:

Ellen Lewis, surviving spouse
Massawa Kawana Lewis, son, a minor
Melvin Lewis Williams, son, a minor

Under the circumstances the Court is required to interpret and comply with the following language of the Act found in Section 8(b):

If the Court of Claims finds, in the case of an application made by a person dependent for (her) support on a deceased victim, that persons other than the applicant were also dependent on that victim for their support, it (the Court) shall also (1) name those persons in its order; (2) state the percentage share of the total compensation award and the dollar amount to which each is entitled, and (3) order that those amounts be paid to those persons directly or, in the case of a minor, incompetent, to his (her) guardian or conservator, as the case may be.

It would seem appropriate and reasonable to order the distribution of the $7,770.00 in accordance with the rules of distribution stated in Section 11, Sub-Section 1 of the Probate Act. This rule would allow one-third to the victim's surviving spouse, Ellen Lewis, and the remaining two-thirds divided equally among the victim's two children, Massawa Kawana Lewis and Melvin Lewis Williams.

To obviate the necessity of the mothers of each of the two minor children being appointed guardian of her child's estate and considering all other facts in this case, the Court believes that the best interests of the deceased victim's family would be served by ordering that the award for loss of support be disbursed to the Claimants' natural guardians, their mothers, in periodic payments as authorized in Section 8, Subparagraph 4 of the Act. As the natural guardians of their minor children, the mothers have a legal obligation to provide for suitable support and education for their children. In fulfilling this obligation, we believe that the mothers would necessarily be required to expend the proper amount from each monthly payment received hereunder for the care and nurture of her child.

THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

(1)   The sum of $2,230.00 is awarded to the Claimant Ellen Lewis, the wife of the victim of a violent crime, for funeral expenses this Claimant paid for and on behalf of the victim.

(2)   The total sum of $5,180.00 is awarded to Ellen Lewis and Massawa Kawana Lewis, her minor child, collectively, as persons who were dependent for their support on Cleophus Lewis, the deceased victim of a violent crime. This award shall be paid to Ellen Lewis in eleven monthly installments, the first ten in equal amounts of $500.00 each and the last installment in the amount of $180.00.

(3) The sum of $2,590.00 is awarded to Mary Ann Scott, natural guardian of Melvin Lewis Williams, a person who was dependent for his support on Cleophus Lewis, the deceased victim of a violent crime. This award shall be paid in eleven monthly installments, the first ten in equal amounts of $250.00 each and the last installment in the amount of $90.00.

IT IS FURTHER ORDERED that all of the payments above mentioned shall be made from the Court of Claims Appropriation insofar as it is legally possible to do so.

As to the matter of the Petition for attorneys fees filed by attorney, Spencer W. Schwartz, the Court finds that, considering the time spent by said attorney in representing the Claimants at the hearing and preparation for the hearing, the complexity of the issues litigated and the results obtained, said attorney may charge the Claimant, Ellen Lewis, the sum of $1,400.00 and said attorney may charge the Claimant, Mary Ann Scott, the sum of $600.00. This finding and order is pursuant to Section 12 of the Act.